# EXHIBIT A

**EXHIBIT A**

FILED
17 AUG 04 PM 2:42

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 17-2-20730-6 SEA

IN THE SUPERIOR COURT OF WASHINGTON
COUNTY OF KING

| | |
|---|---|
| JOHN KWESELE, | Case No. |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | (Unlawful Employment Practices, Jury Trial Demanded) |
| KING COUNTY; TOM JONES; JOSH SHIELDS; TERRY RHOADS; MICHAEL AVERY; and DOES I THROUGH X, inclusive, | |
| Defendants. | |

## INTRODUCTION

1. This is an action for damages pursuant to the 42 U.S.C. §§ 1981 and 1983 to redress unlawful employment practices by defendants that has caused plaintiff to suffer deprivations of his statutory rights as well as emotional, physical and mental distress.

## VENUE

2. The unlawful employment practices alleged below were committed within the geographical boundaries of King County; thus, the Seattle Courthouse is the appropriate forum for this case.

COMPLAINT FOR DAMAGES - 1

CIVIL RIGHTS JUSTICE CENTER PLLC
2150 NORTH 107TH ST. STE. 520
SEATTLE, WASHINGTON 98133
(206) 577-7719 / FAX: (206) 659-0183

## PARTIES

3. Plaintiff John Kwesele is an African born adult male citizen of the United States who resides in Snohomish County, Washington. Plaintiff was hired by King County Metro in 1998 and in 2009 became a Rail Operator. He was a Rail Supervisor when he was discharged in 2014.

4. Defendant Tom Jones was, at all times relevant, a Rail Operations Superintendent for King County Metro and, in doing the things complained of herein, was acting as its agent and within the course and scope of his employment by King County. King County is strictly liable for all of the acts committed by defendant Tom Jones.

5. Defendant Josh Shields was, at all times relevant, a Rail Supervisor for King County Metro and, in doing the things complained of herein, was acting as its agent and within the course and scope of his employment by King County. King County is strictly liable for all of the acts committed by defendant Josh Shields.

6. Defendant Terry Rhoads was, at all times relevant, the Rail Chief of King County Metro and, in doing the things complained of herein, was acting as its agent and within the course and scope of his employment by King County. King County Metro is strictly liable for all of the acts committed by defendant Terry Rhoads.

7. Defendant Michael Avery was, at all times relevant, a Rail Manager for King County Metro and, in doing the things complained of herein, was acting as its agent and within the course and scope of his employment by King County. King County is strictly liable for all of the acts committed by defendant Michael Avery.

8. Defendant King County is a political subdivision of the State of Washington and which runs the King County Department of Transportation and King County Metro.

COMPLAINT FOR DAMAGES - 2

CIVIL RIGHTS JUSTICE CENTER PLLC
2150 NORTH 107TH ST. STE. 520
SEATTLE, WASHINGTON 98133
(206) 577-7719 / FAX: (206) 659-0183

# FACTUAL BACKGROUND

9. Plaintiff was hired by King County Metro in 1998, and in 2009, became a Rail Operator. Plaintiff continued to work in this capacity until 2012, when he relocated to Los Angeles to accept a supervisory position. Plaintiff saw the advertisement for the supervisor position and applied in October 2012.

10. During the recruitment phase, Plaintiff's written and oral test scores were among the highest (he placed second out of 70). Plaintiff's test scores during the post-hiring training phase were also among the highest.

11. Plaintiff returned to King County Metro on February 4, 2013, as a Rail Supervisor in Training. All supervisors in training are initially on probation until their training period ends. Plaintiff was terminated from King County Metro on April 18, 2014.

12. On March 7, 2013, plaintiff was falsely arrested while in training. Plaintiff and fellow supervisor in training, Jeff Wachtel, accompanied by their instructor Bryan Mathews, were learning to operate Train 6. Plaintiff and the other two men boarded at a staff-only entrance.

13. While Mr. Wachtel was operating the rail, Fare Enforcement Officers boarded and asked plaintiff to show his ORCA card. At the time, plaintiff was wearing his rail supervisor in training ID cards in a clear plastic pouch on his person. Plaintiff explained that he was on duty and was not required to swipe his ORCA card. Plaintiff provided the officers with his ID card identifying him as an employee.

14. The Fare Enforcement Officers denied that plaintiff was a rail supervisor and asked to see other identification. Plaintiff suggested they call the command center ("LCC") to

COMPLAINT FOR DAMAGES - 3

CIVIL RIGHTS JUSTICE CENTER PLLC
2150 NORTH 107TH ST. STE. 520
SEATTLE, WASHINGTON 98133
(206) 577-7719 / FAX: (206) 659-0183

1 confirm that he was currently on-duty. The Fare Enforcement Officers refused to call LCC and instead called the police.

15. Plaintiff entered the employee-only inactive cabin, using his keys. Plaintiff did this, in part, to demonstrate that he was an on-duty employee. He was also feeling discriminated against and was embarrassed. The police arrived and ordered plaintiff to get out. When plaintiff exited the employee-only cabin, the police ordered him to turn around and handcuffed him. Even though the plaintiff showed the police officers his ID badge, plaintiff was arrested and placed in a police car.

16. While plaintiff was held in the police car, Supervisor Brockett arrived from LCC and confirmed to the officers that plaintiff was an on-duty rail supervisor. Plaintiff was released, but was later charged with an infraction for failing to pay fare.

17. On March 8, 2013, plaintiff was called in for an Investigation Interview. During this interview, plaintiff complained that the arrest was racially motivated.

18. On March 8, 2013, plaintiff complained to Tom Jones that the treatment by the Fare Enforcement officers and the arrest had been racially motivated. Also on March 8, 2013, plaintiff submitted a complaint alleging that the incident and subsequent treatment was racially motivated to Michael Avery and Max Lemke. He informed them that he believed he was being mistreated because he is from Africa, is Black and he speaks with an accent.

19. On March 8, 2013, the day after plaintiff's arrest, King County Metro issued a new policy requiring supervisors to always wear their reflective vests while on duty.

20. On March 18, 2013, plaintiff was informed by his superiors that because of his arrest, his probationary period was extended.

COMPLAINT FOR DAMAGES - 4

CIVIL RIGHTS JUSTICE CENTER PLLC
2150 NORTH 107TH ST. STE. 520
SEATTLE, WASHINGTON 98133
(206) 577-7719 / FAX: (206) 659-0183

21. On March 20, 2013, plaintiff submitted a written complaint to Tom Jones, stating that the arrest and defendants' treatment of plaintiff following the arrest were racially motivated.

22. The failure-to-pay-fare infraction was dropped in April 2013. Nevertheless, defendants declined to reverse plaintiff's probation extension.

23. On September 4, 2013, plaintiff complained to Michael Avery at the LCC that he felt he was being singled out by defendants because he is Black. He complained again to Tom Jones at the LCC on October 21, 2013, that he was being treated unfairly because of race and ethnicity.

24. In February of 2014, Vestal presented plaintiff with a memo listing various reasons defendants were ending his probation and terminating him.

25. The Union objected, and defendants then decided that, rather than terminate plaintiff, they would allow him: (1) to become a train operator, (2) the opportunity to resign in lieu of termination, or (3) to accept a second probation extension. Plaintiff elected to have his probation extended rather than be demoted or forced to resign.

26. During the February 11, 2014 meeting, plaintiff complained to David Vestal that he felt his treatment by defendants was motivated by his race.

27. In February 2014, plaintiff was sent for retraining. Plaintiff's trainer, Jaime Kai expressed frustration that she did not know what to train plaintiff in because Vestal had sent her conflicting emails. Kai tested plaintiff and found him to be proficient in his duties. She asked plaintiff why he was being retrained and sent an email to Terry Rhoads praising his abilities.

COMPLAINT FOR DAMAGES - 5

CIVIL RIGHTS JUSTICE CENTER PLLC
2150 NORTH 107TH ST. STE. 520
SEATTLE, WASHINGTON 98133
(206) 577-7719 / FAX: (206) 659-0183

28. On February 18, 2014, plaintiff discussed his probation extension with Michael Avery at PACE (PACE is a King County anti-discrimination program, and plaintiff was on the PACE committee) meeting break times. Plaintiff stated that he felt defendants had singled him out for this treatment based on his race, and because he had a history of objecting to racist treatment.

29. On March 18, 2014, plaintiff was performing his supervisory duties. Plaintiff notified Vestal that he had to attend a 1:00 p.m. PACE meeting; Vestal was reluctant to allow plaintiff to attend, but PACE emailed Vestal to say that plaintiff must be allowed to attend.

30. At around 12:40 p.m., plaintiff was radioed by the LCC Chief and notified that there were unauthorized people in the train's Right of Way ("ROW"). The Chief told plaintiff to investigate. When plaintiff arrived, he found two surveyors (employed by a consulting engineering company) wearing personal protective equipment and standing in the ROW surveying the area. These surveyors were familiar to plaintiff and frequently worked in this area. Plaintiff told them that they would need to leave and they responded that they would be finished in about five minutes. While still at the scene, plaintiff called Chief Al Azen that the two people in the ROW were employees of the consulting engineering company and were leaving in five minutes. Chief Azen told plaintiff that they did not have a work permit to be in the ROW at that time and that they must leave immediately. With this instruction, plaintiff told the employees to leave. Plaintiff then escorted them out of the area. The following day, plaintiff was told the incident was being investigated.

31. Also on March 19, 2014, plaintiff filed an EEOC complaint alleging discrimination on the basis of race and national origin on the grounds that he was given an

COMPLAINT FOR DAMAGES - 6

CIVIL RIGHTS JUSTICE CENTER PLLC
2150 NORTH 107TH ST. STE. 520
SEATTLE, WASHINGTON 98133
(206) 577-7719 / FAX: (206) 659-0183

extension of his probation while other white, US-born employees "had similar performance issues during their probationary period but were not given the same level of discipline."

32. On April 2, 2014, plaintiff again complained to David Vestal about being singled out for discipline based on his race.

33. On April 18, 2014, plaintiff was discharged.

34. Defendants' discipline of plaintiff was much harsher than the discipline given to white employees for equal or worse behavior. For example, a white rail supervisor committed a "door error," where he opened the train door when not next to a platform – a serious safety issue. The supervisor was not punished. Terry Rhoads wrote a letter on August 28, 2012, and indicated that the supervisor had made this error but that after thinking it over, Rhoads decided not to suspend him.

35. On March 3, 2013, before plaintiff's arrest, a white/native American trainee supervisor opened the doors on the wrong side of the train. This employee received a one-day suspension, but did not have his probation extended. The same supervisor also made dispatch mistakes, but was never sent to retrain.

36. On March 12, 2013, another supervisor who was hired at the same time as plaintiff, and was also in training and on probation, had a stop indication violation, a serious infraction and was given a one-day suspension – but did not have his probation extended.

37. Plaintiff was singled out for harsh discipline because of his race and national origin and/or complaints about disparate treatment. Additionally, plaintiff would not have been terminated if he had not had his probation extended in March of 2013.

38. Plaintiff's treatment has caused him mental and emotional distress, lost wages, costs associated with his employment search, humiliation, and embarrassment.

COMPLAINT FOR DAMAGES - 7

CIVIL RIGHTS JUSTICE CENTER PLLC
2150 NORTH 107TH ST. STE. 520
SEATTLE, WASHINGTON 98133
(206) 577-7719 / FAX: (206) 659-0183

## FIRST CAUSE OF ACTION

(Racial Discrimination – 42 U.S.C. § 1981)

39. Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 38 with the same force and effect as if such paragraphs were separately realleged in this First Cause of Action.

40. At all times herein mentioned, plaintiff was an employee and a citizen protected by 42 U.S.C. § 1981, specifically, against practices which constituted discrimination or discriminatory treatment based on his race—Black/African.

41. Plaintiff has been discriminated against in the terms and conditions of his employment relationship with each defendant because of his race, and has been denied those same conditions and privileges of employment otherwise afforded to his Caucasian counterparts.

42. As a proximate result of defendants' discriminatory action against plaintiff, as alleged above, plaintiff has been harmed in that he has suffered a loss of wages and benefits and loss of employment, plus interest. As a result of such discrimination and consequent harm, plaintiff has suffered such damages in an amount according to proof at trial.

## SECOND CAUSE OF ACTION

(Retaliation – 42 U.S.C. § 1981)

43. Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 42 with the same force and effect as if such paragraphs were separately realleged in this Second Cause of Action.

44. Defendants engaged in unlawful employment practice in violation of 42 U.S.C. § 1981 by terminating plaintiff in retaliation for his complaints of racial discrimination; by

COMPLAINT FOR DAMAGES - 8

CIVIL RIGHTS JUSTICE CENTER PLLC
2150 NORTH 107TH ST. STE. 520
SEATTLE, WASHINGTON 98133
(206) 577-7719 / FAX: (206) 659-0183

refusing to promote plaintiff; and, by disciplining plaintiff for acts for which Caucasian employees were not disciplined.

45. The effect of defendants' action has been to deprive plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee because of his protected activity of reporting racial discrimination.

46. As a proximate result of defendants' discriminatory action against plaintiff, as alleged above, plaintiff has been harmed in that he has suffered a loss of wages and benefits and loss of employment, plus interest. As a result of such retaliation and discrimination and consequent harm, plaintiff has suffered such damages in an amount according to proof at trial.

47. As a further proximate result of defendants' discriminatory actions against plaintiff, as alleged above, plaintiff has been harmed in that he has suffered humiliation, embarrassment, loss of reputation, mental anguish, anxiety, mortification, loss of good health, and emotional and physical distress in an amount according to proof at trial.

## THIRD CAUSE OF ACTION

(Racial Discrimination – 42 U.S.C. § 1983)

48. Plaintiff realleges and incorporates by reference herein the allegations set forth in paragraphs 1 through 47 with the same force and effect as if such paragraphs were separately realleged in this First Cause of Action.

49. Plaintiff has been discriminated against in the terms and conditions of his employment because of his race, and has been deprived of the rights and privileges secured to him by the Constitution and laws of the United States, particularly his right to be free from intentional discrimination based on race and the equal protection guarantee contained in the Fourteenth Amendment.

COMPLAINT FOR DAMAGES - 9

CIVIL RIGHTS JUSTICE CENTER PLLC
2150 NORTH 107TH ST. STE. 520
SEATTLE, WASHINGTON 98133
(206) 577-7719 / FAX: (206) 659-0183

50.     As a proximate result of defendants' discriminatory action against plaintiff, as alleged above, plaintiff has been harmed in that he has suffered a loss of wages and benefits and loss of employment, plus interest. As a result of such discrimination and consequent harm, plaintiff has suffered such damages in an amount according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff respectfully prays that this Court enter judgment against each defendant, granting plaintiff:

A.     Declaratory judgment that the acts, policies, and practices of defendants, as complained of herein, violated the rights of plaintiff as secured by the laws of the United States;

B.     Grant a permanent injunction enjoining the individual defendants and defendant King County, its officers, agents, successors, assigns, and all persons in active concert or participation with it, from unlawfully failing to provide equal employment opportunities and benefits to employees based on race, and ethnicity;

C.     Award damages to plaintiff for emotional, physical, and mental distress against all defendants in an amount according to proof at trial;

D.     Back pay and front pay, according to proof at trial;

E.     Fringe benefits, including medical and likely earned pension or retirement plan;

F.     Plaintiff's costs of suit, including statutory attorney's fees; and

G.     Such further relief as this Court deems appropriate.

DATED this 4th day of August, 2017.

CIVIL RIGHTS JUSTICE CENTER, PLLC

Darryl Parker, WSBA #30770
dparker@civilrightsjusticecenter.com

COMPLAINT FOR DAMAGES - 10

CIVIL RIGHTS JUSTICE CENTER PLLC
2150 NORTH 107TH ST. STE. 520
SEATTLE, WASHINGTON 98133
(206) 577-7719 / FAX: (206) 659-0183