THE HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN KWESELE,

                Plaintiff,

v.

KING COUNTY, *et al.*,

                Defendants.

No. 2:17-cv-1426-RAJ

ORDER

This matter comes before the Court on Plaintiff's Motion for a New Trial or, Alternatively, to Alter or Amend Judgment. Dkt. # 48. Defendants oppose, and Plaintiff has filed a Reply. Dkt. ## 49, 50. For the reasons stated below, the Court **DENIES** Plaintiff's Motion.

## I. BACKGROUND

On January 18, 2019, this Court granted Defendants' Motion for Summary Judgment against Plaintiff on his Section 1981 race discrimination and retaliation claims, and Section 1983 claims. Dkt. # 43. The Court outlined the relevant facts of this case in its prior Order and will not reiterate those facts here. *Id*. On February 14, 2019, Plaintiff filed the instant Motion, arguing that the Court should grant Plaintiff a new trial or amend its prior judgment. Dkt. # 48.

ORDER - 1

## II. LEGAL STANDARD

The Court construes Plaintiff's Motion as one arising under Federal Rule of Civil Procedure 59(e). Rule 59(e) allows a plaintiff to file a motion to alter or amend a judgment "no later than 28 days after the entry of judgment." Fed. R. Civ. Proc. 59(e). Although a district court may extend filing times for good cause, Rule 6(b)(2) expressly prohibits the court from extending time to act under Rule 59(e). Fed. R. Civ. Proc. 6(b)(2). A Rule 59(e) motion "'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error*, or if there is an intervening change in the controlling law.'" *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (quoting *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999)) (emphasis in original).

## III. DISCUSSION

Plaintiff argues that this Court's decision dismissing his Section 1981 discrimination and retaliation claim should be amended due to (1) the Court committing legal and factual error; (2) there was an intervening change in the law with respect to the retaliation claim; and (3) for public policy reasons. Dkt. # 48. For the reasons that follow, the Court concludes that it did not err in dismissing Plaintiff's Section 1981 discrimination and retaliation claims, and will not amend its ruling on public policy grounds.

A. <u>The Court Did Not Err in Dismissing Plaintiff's Discrimination Claim</u>

The Court agrees with Plaintiff that Section 1981 imposes liability against employers for hostile work environments. Dkt. # 48 at 4. And it is true that the Court found the evidence of racist behavior by Plaintiff's colleagues "may have supported a hostile work environment claim," had Plaintiff actually pled such a claim. Dkt. # 43 at 17 n.7. But as the Court already explained, "Plaintiff is not making a hostile work environment claim in this lawsuit; he is alleging claims of

ORDER - 2

racial discrimination and retaliation against him by King County and his direct supervisors through his termination and probation extensions." *Id.* at 19. Plaintiff provides no authority that the need to plead a hostile work environment claim is obviated by pleading other Section 1981 claims for discrimination and retaliation. Hostile work environment claims are distinct claims, with distinct elements, and must be analyzed separately from discrimination and retaliation claims. *See, e.g., Atkins v. Commercial Office Interiors*, C06-1594-JCC, 2007 WL 4561091, at \*3 (W.D. Wash. Dec. 20, 2007) (finding that discrimination and hostile work environment claims are "distinct Title VII claims" with differing elements, and considering them separately).

Plaintiff lambasts the Court for providing a "veritable blueprint" for employers to "passively tolerate discrimination," but ignores his inexplicable failure to ever properly assert a hostile work environment claim. Dkt. # 48 at 14. Plaintiff has still not argued that he is, or was ever, asserting a Section 1981 hostile work environment claims against Defendants. Plaintiff has not filed, for instance, a Rule 15(b)(2) motion or made any other attempt to amend his pleadings to add a hostile work environment claim. As such, this claim has never been properly before the Court, and this status continues to this day.

Absent an active claim for hostile work environment, Plaintiff's attempt to shoehorn in this unpled claim to his discrimination claim falls short. Plaintiff's Motion again fails to show that this environment was the product of any action or discriminatory intent on the part of the relevant decision-makers. The Court has already addressed the other alleged acts of discrimination by other King County employees Doug Moore, Annette James, Kevin Winter, and Glenn Brockett, and found that Plaintiff failed to connect these actions to Plaintiff's termination by the relevant decision-makers. Dkt. # 43 at 17-18. Plaintiff provides little reason for the Court to deviate from its conclusion.

ORDER - 3

Importantly, Plaintiff's failure to articulate a causal link between his direct supervisor's actions and the alleged hostile environment distinguish this case from the two out-of-circuit authorities Plaintiff cites in his Motion. Dkt. # 48 at 15-16. In its previous Order, the Court determined based on the record that it was King County's ignorance and apathy that contributed to this environment, not the actions of Plaintiff's supervisors. Dkt. # 43 at 18-21. The Court's view of the record on this point remains the same. Plaintiff's charge in his Motion that his supervisors "were fabricating evidence against him in order to get him fired" is still not supported by citations to admissible evidence in the record. Dkt. # 48 at 8. The only evidence Plaintiff cites that is connected to Plaintiff's actual supervisors fails to indicate any discriminatory animus on the part of relevant decision-makers. For instance, alleged statements by Michael Avery that suggested Sound Transit disapproved of Plaintiff do not show any discriminatory intent on the part of the relevant decision-makers because, as the Court already determined, Sound Transit has no managerial authority over Plaintiff. Dkt. # 43 at 7.[1] Plaintiff does not challenge this finding, and fails to point to any evidence that Sound Transit played any role in taking any adverse action against him.[2]

Plaintiff's Motion also largely ignores the Court's determinations that Plaintiff's prima facie discrimination claim failed on multiple prongs. First, Plaintiff has failed to meaningfully address the Court's finding that Plaintiff failed to show that similarly situated individuals outside his protected class were treated more favorably. Dkt # 43 at 14. Plaintiff still does not provide evidence that other fellow RSITs received different discipline, and does not address the Court's point that the ROW incident is of a different kind and severity entirely. Dkt. # 43 at 14-15. Second, Plaintiff fails to effectively counter that Plaintiff's multiple performance

---

[1] As the Court noted, Defendant Michael Avery disputes making these statements. Dkt. # 47 at 7; Dkt. # 21, Ex. D, at 35:4-18.

[2] Plaintiff also admits that the challenged and off-hand comments by Michael Avery "did not create a hostile work environment." Dkt. # 50 at 5.

ORDER - 4

lapses still indicate that he was not meeting his employer's legitimate expectations. Dkt. # 43 at 12-14. The Court was particularly concerned with the Right-of-Way ("ROW") incident, where Plaintiff's admitted failure to properly follow the ROW protocol put surveyors in serious danger and could have led to fatalities. Dkt. # 43 at 12-13. Plaintiff's actions during this incident, which included permitting surveyors to remain in the ROW for the trail tracks for an extended period of time and misstating their location and intentions to his supervisors, appeared to serve as the main catalyst for Plaintiff's termination. *Id.* at 7-8, 12-13. Even if this Court ignored the other performance lapses, this incident was by itself sufficient reason for termination. Dkt. # 43 at 14, 16-17, 22-23.

Plaintiff argues that some of the alleged performance issues, such as arriving late or not contacting colleagues when he reported for his shift, were inaccurate and reported by some of the colleagues who harbored racial animus towards him. Dkt. # 48 at 5. Even if the Court accepts this as true, the result would not change, as there are a number of other well-documented performance lapses that show both that Plaintiff was not meeting his employer's legitimate expectations and that his termination was not pretextual. For instance, Plaintiff gives no indication that any allegedly racist colleague was connected with the ROW incident. While termination for the ROW incident does not excuse the offensive behavior of Plaintiff's colleagues, it also appears from the current record to be disconnected with other incidents of racial animus. The record still indicates that termination decision was primarily based not on the reports from the allegedly offending employees, but by the ROW incident and reports from other employees, such as Chiefs Alfred Azen, David Vestal, Gabriel Rukeyser, Keith Sherry, and James Dunn, Superintendent Tom Jones, and Rail Supervisor Justin Swanson. *See, e.g.*, Dkt. # 24 at Exs. A, D, E, G, J, L.

Similarly, Plaintiff's belated analysis of a "Cat's Paw" theory under *Staub* is

unavailing at this stage. Dkt. # 48 at 6-7. First, as the Court previously held, Plaintiff inadequately briefed this issue on summary judgment with only two sentences of analysis. Dkt. # 43 at 18. Second, even if Plaintiff had properly asserted this theory, he fails to argue for its proper application to these facts. Plaintiff fails to argue or point to evidence showing that any of the offending employees had "singular influence" over the relevant decision-makers. *See Staub v. Proctor Hosp.,* 562 U.S. 411, 416 (2011). As Defendants point out, Plaintiff's evidence does not establish whether the observations of Moore, Shields, and James formed the basis for Plaintiff's termination; instead, the record termination decision was based on reports of Plaintiff's performance from multiple other employees.

Finally, Plaintiff also contends that the Court erred in misapplying the *McDonnell Douglas* framework to Plaintiff's case, and argues more generally that the burden-shifting framework should not apply to discrimination cases such as this one. Dkt. # 48 at 12-14; Dkt. # 50 at 2-3. The Court rejects this argument for two reasons. First, it is well-settled in this Circuit that the burden-shifting framework of *McDonnel Douglas* is properly applied to discrimination and retaliation claims under Section 1981. *See, e.g.*, *White v. California*, 754 Fed. Appx. 575, 576 (9th Cir. 2019) ("In evaluating claims of discrimination and retaliation under 42 U.S.C. § 1981, we apply the burden-shifting framework established in *McDonnell Douglas*"). Second, the Court explicitly did not rely solely on *McDonell Douglas* in rejecting Plaintiff's discrimination claim. The Court also considered Plaintiff's claim under the alternate standard set forth in *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003), *as amended* (Jan. 2, 2004) (citations omitted) (emphasis added). Dkt. # 43 at 19. The Court found that even outside the *McDonnell Douglas* framework, Plaintiff failed "to adequately provide citations to the record of discriminatory animus on the part of the relevant decision-makers at King County." *Id*. This continues to be true; Plaintiff has failed to show that a discriminatory reason "more likely than not" motivated his

ORDER - 6

employer to terminate him. *Metoyer v. Chassman*, 504 F.3d 919, 931 (9th Cir. 2007). The record strongly indicates that Plaintiff's performance failures, notably the ROW incident, prompted his termination, not his race.

B. <u>The Court Did Not Err in Dismissing Plaintiff's Retaliation Claim</u>

In addition to the arguments raised above, Plaintiff also argues that the Court should reverse its dismissal of his retaliation claim because it applied the wrong legal standard. Dkt. # 48 at 9-11. Plaintiff identifies a recent Ninth Circuit case, that he contends constitutes an intervening change in law that should change the Court's analysis. *Nat'l Ass'n of African Am.-Owned Media v. Charter Commc'ns, Inc.*, 915 F.3d 617, 626 (9th Cir. 2019). In this case, the Ninth Circuit was presented with Section 1981 claims involving racial discrimination in refusing to enter a carriage contract with plaintiffs. *NAAOM*, 915 F.3d at 619-22. The Ninth Circuit held "[i]f discriminatory intent plays any role in a defendant's decision not to contract with a plaintiff, even if it is merely one factor and not the sole cause of the decision, then that plaintiff has not enjoyed the same right as a white citizen. This, we conclude, is the most natural reading of §1981." *Id.* at 625.

The Court agrees that this decision, which was entered after this Court issued its ruling, may theoretically constitute an intervening change in law. However, even if the Court had applied *NAAOM*, it would not change the outcome. As the Court already noted, Plaintiff provided little evidence, beyond temporal proximity, that his protected activity "was a factor at all" in the termination decision. Dkt. # 43 at 22. Indeed, Plaintiff's final complaint occurred after the ROW incident, and Plaintiff has still failed to show that this complaint was a factor in the final termination decision, through the statements of his supervisors or otherwise. *Id.* at 22-25. Even if this Court had applied the "mixed-motive standard" to Plaintiff's retaliation claim, the lack of any new record citation that Plaintiff's protected activity was a factor in his termination, or that the proffered reasons for termination were pretextual, would lead

ORDER - 7

to the same result.

C. <u>The Court Will Not Amend its Judgment on Public Policy Grounds</u>

Finally, the Court declines to amend its judgment for public policy reasons. Plaintiff contends the Court's decision provides a "veritable blueprint for how an employer can engage in a systematic course of conduct that either purposefully advances or passively tolerates discrimination to such a magnitude that its black employees are unable to enjoy the same benefits as their white counterparts while being perpetually vulnerable to termination." Dkt. # 48 at 14. The Court disagrees, and sees counsel's unfounded contention as nothing more than blame shifting because of his failure to plead the only claim that was clearly supported by his facts. The "blueprint" for avoiding this result in the future is simple: plaintiffs exposed to a racially hostile work environment should plead a Section 1981 hostile work environment claim against their employer. Plaintiff's counsel in this case has failed to do so. Instead, Plaintiff only alleged claims of discrimination and retaliation against his employer and direct superiors when the record (1) reflected serious safety violations by Plaintiff; and (2) contained few indications that the relevant decision-makers harbored discriminatory or retaliatory animus. These specific claims were not supported by the record or law, and it was for those reasons that the Court dismissed them. The Court will not reverse its decision dismissing these claims solely because of the potential viability of a claim that is not properly before it.

**IV. CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion. Dkt. # 48.

Dated this 30th day of April, 2019.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER - 8